**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|                        |   |                                              |
|------------------------|---|----------------------------------------------|
| **UNITED STATES,**     | : |                                              |
|                        | : | **Criminal Action No. 1:04-cr-00103**        |
| **Plaintiff**          | : |                                              |
|                        | : | **(Chief Judge Kane)**                       |
| **v.**                 | : |                                              |
|                        | : |                                              |
| **FRANCISCO MARCEL,**  | : |                                              |
|                        | : |                                              |
| **Defendant**          | : |                                              |

**MEMORANDUM**

Francisco Marcel, proceeding pro se, filed the instant motion seeking the return of

$57,537.70 forfeited to the United States through an in rem civil proceeding.  (Doc. No. 829.)

The motion is fully briefed and ripe for disposition.  For the reasons that follow, the motion will

be granted in part and denied in part.

**I.    BACKGROUND**

On March 17, 2004, the Government filed a nineteen-count indictment charging

Francisco Marcel, Sr., and twelve other defendants with drug trafficking and various related

offenses.  (Doc. No. 1.)  The Government filed a superceding indictment on May 26, 2004

(Doc. No. 218), and a second superceding indictment on July 21, 2004 (Doc. No. 297).  The

second superceding indictment, like those before it, contained a forfeiture count concerning real

property at 1450 NW 129th Avenue, Sunrise, Florida ("Florida property"), of which Marcel was

the owner of record, and approximately $500,000 in United States currency.  (Doc. No. 1

at 29–31; Doc. No. 218 at 29–31; Doc. No. 297 at 29–31.)  As a basis for the forfeiture count,

the Government alleged that Marcel had obtained both the Florida property and currency with

the direct or indirect proceeds of the aforementioned offenses and that Marcel had used, or had intended to use, the Florida property and the currency to commit or facilitate those offenses. (Doc. No. 218 at 29.)

Approximately three weeks after the filing of the original indictment, Marcel gave his wife Ana Marcel power of attorney to negotiate and enter into a contract on his behalf for the sale of the Florida property.  (Doc. No. 845-2 at 27.)  With a buyer in hand, Philip Rosen, the attorney representing the Marcels in the sale, contacted Assistant United States Attorney James Clancy, lead counsel for the Government, and alerted him to the impending sale.  (Doc. No. 845-2 at 28.)  Pursuant to an "agreement" with Clancy—the particulars of which are neither obvious nor well substantiated—Rosen promised to distribute $2,000 of the proceeds at closing to Ana Marcel and place the balance of the proceeds in an escrow account where the funds were to remain "until such time as he received instruction from Francisco and Ana Marcel and the United States Attorney's Office or by Court Order to release said funds."  (Id.; see also Doc. No. 829 at 3.)  At the closing on May 7, 2004, Rosen made the promised distribution to Ana Marcel and deposited $57,537.70, the balance of the proceeds, in an escrow account.  (Id.)

In September 2005, Marcel appeared before the Court and pled no contest to a one-count information charging him with the use of an interstate communication facility to engage in a conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 843(b) and 846.  (Doc. Nos. 725, 728; see also Doc. No. 816 at 12.)   At the hearing, the Government briefly described the range of punishments that could result from Marcel's plea:

> [S]ince there was not a plea agreement, because the Government cannot enter into one in a no contest plea situation, I just want to make sure that the record reflects—and if I missed this, I apologize—that by entering even a plea of no contest, Mr. Marcel

> subjects himself to the possible maximum statutory punishment for
> use of a communication facility involving drug trafficking.  And in
> this case, that is four years of confinement, a $250,000 fine, I believe
> two years of supervised release, a special assessment of $100, and the
> loss of certain federal benefits.

(Doc. No. 727 at 23.)  Neither Marcel nor the Government made any mention of the forfeiture

count or the possibility of future forfeiture proceedings.  (See generally Doc. No. 727.)

On January 27, 2006, the Government filed a civil complaint for forfeiture against the

$57,537.70 in the escrow account.  (See United States v. $57,537.70 in United States Currency,

Civ. No. 06-00218, Doc. No. 1 (M.D. Pa. Jan. 27, 2006).)  Pursuant to a warrant of arrest in rem

issued by this Court, any persons claiming an interest in, or a right against, the defendant

currency were required to file a verified statement of interest or right with the Clerk of Court no

later than thirty days after the date of service of the complaint or the final date on which legal

notice was published.  (See United States v. $57,537.70 in United States Currency,

Civ. No. 06-00218, Doc. No. 4 (M.D. Pa. Jan. 27, 2006).)  The Government personally served

Ana Marcel with the forfeiture complaint, a summons, a warrant of arrest in rem, and legal

notice on February 23, 2006 at an apartment in Camp Hill, Pennsylvania (See United States v.

$57,537.70 in United States Currency, Civ. No. 06-00218, Doc. No. 7 at 12–13 (M.D. Pa. Feb.

27, 2006)), and, the following week, personally served Courtney Waltz, legal assistant to

William Fulton, one of Marcel's three attorneys in the criminal proceedings, with the forfeiture

complaint, the warrant of arrest in rem, and legal notice,[1] (See United States v. $57,537.70 in

---

[1] According to the process receipt, the Government instructed the United States Marshals
Service to serve Fulton with "a copy of the Verified Complaint of forfeiture, Legal Notice, and
Warrant of Arrest in Rem."  (United States v. $57,537.70 in United States Currency,
Civ. No. 06-00218, Doc. No. 8 at 1 (M.D. Pa. Mar. 6, 2006).)  There is no indication in the
record that the summons was served.

United States Currency, Civ. No. 06-00218, Doc. No. 8 (M.D. Pa. Mar. 6, 2006)).  Lastly, the

Government published legal notice of the forfeiture proceedings in a Harrisburg, Pennsylvania,

newspaper on March 17, March 24, and March 31, 2006.  (See United States v. $57,537.70 in

United States Currency, Civ. No. 06-00218, Doc. No. 10 (M.D. Pa. Apr. 7, 2006).)

        Responding to the warrant of arrest, Rosen remitted the $57,537.70 in the escrow account

to the Department of Justice on March 28, 2006.[2]  (Doc. No. 845-2 at 28.)  No statement of

interest or right having been filed, the Government filed a request for entry of default with the

Clerk of Court (See United States v. $57,537.70 in United States Currency, Civ. No. 06-00218,

Doc. No. 11 (M.D. Pa. May 15, 2006)), which the Clerk obliged on May 16, 2006 (See United

States v. $57,537.70 in United States Currency, Civ. No. 06-00218, Doc. No. 12 (M.D. Pa.

May 16, 2006)).

        Just six days later, on May 22, 2006, the Court held a sentencing hearing in Marcel's

still-pending criminal proceedings.  (Doc. No. 817.)  At the hearing, the Government made, and

the Court granted, a motion "to dismiss the original indictment and the superseding indictments

as they pertain[ed] to Mr. Marcel."  (Id. at 14.)  Accordingly, in a judgment rendered May 26,

2006, the Court dismissed "[a]ll counts . . . in the previously filed indictments," including the

forfeiture counts (Doc. No. 802 at 1), and sentenced Marcel to an imprisonment of four years

followed by one year of supervised release (Id. at 2–7).  The Federal Bureau of Prisons

subsequently designated Marcel to McRae Correctional Institution ("McRae") in McRae,

Georgia.  (Doc. No. 812.)

_____

        [2] Presumably, any interest earned on the funds since the sale of the Florida property
almost two years earlier remained in the escrow account.

The Court issued a final order of forfeiture with respect to the $57,537.70 on May 25, 2006.  (See United States v. $57,537.70 in United States Currency, Civ. No. 06-00218, Doc. No. 14 (M.D. Pa. May 25, 2006).)  On February 8, 2007, Marcel filed the instant motion for return of property.  (Doc. No. 829.)  After requesting and receiving three extensions of the deadline for filing a responsive brief (Doc. Nos. 840, 842, 844), the Government timely filed a brief in opposition to Marcel's motion on May 29, 2007 (Doc. No. 845).

## II.   DISCUSSION

Marcel now moves the Court an order directing the Government to return the seized currency, arguing that the Government failed to provide him with adequate notice of the forfeiture action and an opportunity to voice his objections.  (Doc. No. 829 at 2.)  Marcel further contends that the Court dismissed the forfeiture counts in the original and superseding indictments and that "[n]owhere in the docket is [it] mentioned or [did it] proceed before the Court that [forfeiting his] house w[ould] be part of his punishment."  (Id.)  Marcel alleges that he first learned of the forfeiture during a telephone conversation with his wife, who mailed a copy of the legal notice to him at McRea in November 2006, well after the Court had issued the final order of forfeiture.  (Id. at 4.)  Marcel further explains that he

> really did not know what to do until a freind [sic] of [his] in prison voluntarily offer[ed] his help.  Also with the help of the law library clerk who is not well versed in the law but has tried as good as he could to explain to the court that injustice and attempt of intimidation have taken place in this particular case.

(Id.)  Finally, Marcel describes a jailhouse visit from Daniel Pell, another of Marcel's attorneys in the criminal proceedings, during which Pell

> tried to convince [him] in signing [sic] a paper for the release of the money by telling [him] that the Federal Government is going to arrest

5

> [his] wife for tax evasion if that money is returning to her.  At that
> [Marcel] told [Pell that he did] not have to sign any paper unless is
> [sic] a court order.  Since it was not a court order he did not persist.

(<u>Id.</u> at 3.)  Although Marcel does not give a date for the meeting, Pell withdrew as counsel on

March 14, 2006, so the meeting presumably occurred prior to that date.

In its brief in opposition, the Government asserts that "Marcel was served through his

attorney of record, William Fulton, Esquire, who agreed to accept service, on March 3, 2006"

(Doc. No. 845 at 3), and that "the dismissal of the forfeiture counts from the criminal indictments

is of no moment" (<u>id.</u> at 6).  Rather, the Government contends, Marcel's "own motion reveals

that he knew of that continuing intent when he discussed the forfeiture with his first counsel."

(<u>Id.</u> at 7.)

### A.    Treatment of Marcel's Motion

Marcel styles his motion as one brought pursuant to Rule 41(g) of the Federal Rules of

Criminal Procedure.  (Doc. No. 829 at 4.)  Rule 41(g) provides that any "person aggrieved by an

unlawful search and seizure of property or by the deprivation of property may move for the

property's return."  Fed. R. Crim. P. 41(g).  That rule, however, is properly utilized only in the

context of an ongoing criminal proceeding.  Accordingly, Rule 1(5)(B) of the Federal Rules of

Criminal Procedure explicitly excludes proceedings for "a civil property forfeiture for violating a

federal statute" from the roster of actions governed by those rules.  Fed. R. Crim. P. 1(5)(B).

Thus, "[a]fter the case is concluded, a property owner may have other rights under statutory or

common law for return of property wrongfully seized, but he has no such right under rule 41(e)

after conviction."  <u>Onwubiko v. United States</u>, 969 F.2d 1392 (2d Cir. 1992) (citing cases); <u>but

see</u> <u>United States v. Sims</u>, 376 F.3d 705, 708 (7th Cir. 2004) ("The rule can also be invoked after

criminal proceedings have concluded to recover the defendant's property when the property is no longer needed as evidence—unless, of course, it has been forfeited in the course of those proceedings.")

The proper vehicle for challenging a civil forfeiture such the one at hand is, instead, a motion for relief from a final judgment under Rule 60(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 60(b).  Thus, "[w]here criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." Onwubiko, 969 F.2d at 1397; see also United States v. One Toshiba Color Television, 213 F.3d 147, 157 (3d Cir. 2000) (explaining that motion under Federal Rule of Criminal Procedure 41 challenging civil forfeiture should be treated as arising under Federal Rule of Civil Procedure 60(b)).  This applies *a fortiori* where, as here, the movant is proceeding pro se.  See Hartmann v. Carroll, 492 F.3d 478, 482 (3d Cir. 2007) ("[P]ro se filings are to be construed liberally.").  The Court will therefore treat Marcel's motion as one seeking to void the judgement of forfeiture under Rule 60(b) of the Federal Rules of Civil Procedure.

## B.   Providing Constitutionally Adequate Notice of Forfeiture Proceedings to Incarcerated Individuals

Pursuant to Federal Rule of Civil Procedure 60(b)(4), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment" if "the judgment is void."  Fed. R. Civ. P. 60(b)(4).  "A void judgment is one which, from its inception, was a complete nullity and without legal effect."  In re James, 940 F.2d 46, 52 (3d Cir. 1991) (quoting Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972).

The Third Circuit Court of Appeals squarely addressed the question of what qualifies as constitutionally adequate notice in a forfeiture action brought by the federal government against

the property of an incarcerated defendant in <u>United States v. One Toshiba Color Television</u>,

213 F.3d 147 (2000) (en banc).  In that case, the court concluded that

> the circumstances surrounding the federal government's incarceration
> of a prisoner require greater efforts at ensuring notice than would be
> expected for individuals at liberty in society.  When one is in prison,
> the relative difficulty to the government to effect actual notice is
> reduced, while the ability of prisoners to ensure that they receive
> notices directed to them suffers.

<u>Id.</u> at 150.  In so holding, the court relied upon <u>Mullane v. Central Hanover Bank & Trust, Co.</u>,

339 U.S. 306 (1950), which taught that "[a]n elementary and fundamental requirement of due

process in any proceeding which is to be accorded finality is notice reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections."  <u>Id.</u> at 314. Thus at a minimum, due process requires

that when a potential claimant is in the government's custody and detained at a place of its

choosing, notice of a pending forfeiture proceeding, administrative or judicial, must be mailed to

the detainee at his or her place of confinement.  <u>See</u> <u>United States v. McGlory</u>, 202 F.3d 664,

674 (3d Cir. 2000) (en banc); <u>One Toshiba Color Television</u>, 213 F.3d at 156 (holding that the

government's attempts to provide notice of forfeiture proceedings by publishing notice in a

newspaper and mailing notice to an address used by the detainee, the detainee's mother, and an

attorney other than one representing the detainee in the forfeiture proceedings were "clearly

inadequate").

　　　　More recently, the United States Supreme Court signaled its support of the notice

requirements propounded in <u>McGlory</u> and <u>One Toshiba Color Television</u> when it amended the

Federal Rules of Civil Procedure to include Supplemental Rule G.  <u>See</u> Fed. R. Civ. P.

Supp. R. G (effective Dec. 1, 2006).  Supplemental Rule G, which "generally applies to actions

8

governed by the Civil Asset Forfeiture Reform Act of 2000 [18 U.S.C.A. § 981] and also to actions excluded from it," id. advisory committee notes, specifically and unconditionally provides that "[n]otice sent to a potential claimant who is incarcerated *must be sent to the place of incarceration*," Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(C) (emphasis added).  Animating this provision is the "elementary" and enduring requirement, first announced in Mullane more than fifty years ago,  339 U.S. at 314, that, whether a potential claimant is incarcerated or at liberty, "notice must be sent by means reasonably calculated to reach the potential claimant," Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(A).

### C.      United States v. $57,537.70 in United States Currency

Here, the Government made no attempt to mail notice of the forfeiture proceeding to Marcel at McRae or any other place of confinement, and its various attempts to constructively effect notice by publishing the same in a Harrisburg, Pennsylvania, newspaper and by serving process upon Ana Marcel and an assistant to one of Marcel's former attorneys—all while Marcel was incarcerated—were at least, sorely misguided and at best, "clearly inadequate."  One Toshiba Color Television, 213 F.3d at 156.  Moreover, the Government offers no authority in support of its argument that "Marcel was served through his attorney of record" (Doc. No. 845 at 3) or, more generally, that an evidently brief discussion of the civil forfeiture proceeding between Marcel and his attorney of record in the separate and distinct criminal proceeding constitutes adequate notice (id.).  Nor could it, for the Third Circuit Court of Appeals has "[p]lainly stated" that service on an attorney who represented a claimant in a criminal proceeding "could not constitute actual notice" for purposes of a civil forfeiture proceeding, since the claimant, prior to notice, would not have been a party to forfeiture proceeding and, accordingly,

could not have retained counsel therefor.  United States v. $184,505.01 in U.S. Currency,

72 F.3d 1160, 1164 (3d Cir. 1995).  Indeed, Fulton did not formally enter an appearance on

Marcel's behalf until March 14, 2006 (Doc. No. 783)—ten full days after Fulton allegedly

"agreed to accept service on March 3, 2006" (Doc. No. 845 at 3).

   Marcel did not, as the Government represented to the Court in its Verified Complaint of

Forfeiture, "ple[ad] no contest to the charges in the Indictment and agree[] to the filing of a

felony Information cap."[3]  (United States v. $57,537.70 in United States Currency,

Civ. No. 06-00218, Doc. No. 1 at 12–13 (M.D. Pa. Jan. 27, 2006).)  As a matter of record,

Marcel pled no contest to the information and nothing more, and at no point during Marcel's

change-of-plea hearing did the Government so much as mention or allude to the possibility of

forfeiture.  (See Doc. No. 816 at 15–24; Hr'g Tr. 15–24, Sept. 20, 2005.)  Likewise, there is no

evidence to support the Government's representation that "the [Florida property] was sold

pursuant to agreed upon terms between *Francisco Marcel* and the *United States*."  (United States

v. $57,537.70 in United States Currency, Civ. No. 06-00218, Doc. No. 1 at 13 (M.D. Pa. Jan. 27,

2006) (emphasis added).)  Rather, as the Government now alleges in its brief in opposition:

"Through agreement with *Mr. Rosen*, the proceeds of the sale of the Florida property, minus

---

[3] The information in its entirety charges Marcel with

> knowingly and intentionally us[ing] a communication facility,
> specifically the telephone lines, in committing and causing or
> facilitating the commission of any act or acts constituting a felony
> under any provision of Title 21, subchapter I or II, in this case,
> conspiracy to distribute 100 grams or more of a mixture or substance
> containing a detectable amount of heroin, in violation of
> 21 U.S.C. § 846.

(Doc. No. 725 at 1.)  There is no mention whatsoever of forfeiture in the information.

$2,000 to be provided to the Marcels, were to be kept in Mr. Rosen's escrow account until notice and instructions by the *United States*." (Doc. No. 845 at 3 (emphasis added).) Rosen, for his part, offers yet another version of those events—which the Government, oddly enough, cites for support—averring that "the funds were to be held in escrow until such time as Affiant received instructions from Francisco *and* Ana Marcel and the United States Attorney's Office *or* by Court Order." (Doc. No. 845-2 at 28; Rosen Aff. 1 (emphasis added).)

Because the Government failed to provide constitutionally adequate notice of the forfeiture proceedings to Marcel, the Court will declare the final order of forfeiture issued in those proceedings void pursuant to Federal Rule of Civil Procedure 60(b)(4). <u>See</u> Fed. R. Civ. P. 60(b)(4); <u>see also</u> <u>United States v. One Toshiba Color Television</u>, 213 F.3d 147, 156 (2000) (en banc) ("The majority of courts of appeals to consider the fate of a prior forfeiture proceeding that violated notice requirements agree that a judgment issued without proper notice to a potential claimant is void."). However, as the Third Circuit Court of Appeals has cautioned, "a holding that [a] forfeiture [of] property was void does not equate to a ruling that [a forfeiter] is entitled to a return of the property or monetary relief from the government, because a Rule 60(b) motion is not a claim for the return of property." <u>Id.</u> at 156–57; <u>see also</u> <u>United States v. One Hundred Nineteen Thousand Nine Hundred Eighty Dollars</u>, 680 F.2d 106, 107 (11th Cir. 1982) (explaining that Rule 60(b) "cannot be used to impose additional affirmative relief"). <u>United States v. One 1961 Red Chevrolet Impala Sedan</u>, 457 F.2d 1353, 1356 (5th Cir. 1972) (holding that a district court setting aside a judgment under Rule 60(b) may not "go further and order the government to reach into its coffer and return the [forfeited] money"). For that, Marcel "would have to act within the confines of whatever legal framework surrounds the legal or equitable

remedy he will elect to pursue." <u>Id.</u> at 158.  Lastly, the Court offers no opinion as to whether the government is prohibited from reinitiating the forfeiture action against the $57,537.70.  An order consistent with this memorandum will issue separately.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal Action No. 1:04-cr-00103** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **FRANCISCO MARCEL,** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

**AND NOW**, on this 24th day of November 2008, having given due consideration to

Francisco Marcel's Motion for Return of Property Pursuant to Federal Rule of Criminal

Procedure 41(g) (Doc. No. 829), and for the reasons set forth in the memorandum filed herewith,

**IT IS HEREBY ORDERED THAT**

1.    The Motion for Return of Property (Doc. No. 829) is **GRANTED** in part and **DENIED** in part.

2.    The final order of forfeiture issued by this Court on May 26, 2006, in United States v. $57,537.70 in United States Currency, Civ. No. 06-00218 is **DECLARED** void pursuant to Federal Rule of Civil Procedure 60(b)(4).

3.    The Clerk of Court is **DIRECTED** to **RE-OPEN** the file for civil case number 1:06-cv-00218 and **ENTER** therein both the Motion for Return of Property (Doc. No. 829) and this order.

 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

1